UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BANKERS LIFE AND CASUALTY COMPANY, | Court File No. |
| Plaintiff, | **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** |
| v. | |
| SETH McMULLEN, | |
| Defendant. | |

Plaintiff Bankers Life and Casualty Company ("Bankers Life"), by and through its undersigned counsel, files this Complaint against Defendant Seth McMullen ("McMullen"). In support thereof, Bankers Life states:

## I.   NATURE OF THE ACTION

1.   Bankers Life provides seniors with various insurance and financial products. McMullen was a manager for Bankers Life who left to join a competitor.

2.   Shortly before Bankers Life terminated his employment, McMullen surreptitiously downloaded and exported Bankers Life's confidential information, including information regarding policyholders, sales, and commissions, which Bankers Life believes McMullen has used or intends to use to improperly solicit policyholders to cancel their Bankers Life policies. Such actions violate McMullen's contractual agreements with Bankers Life, the Federal Defend Trade Secrets Act, the Minnesota Trade Secrets Act, and common law obligations.

3.   The purpose of this Action is to seek emergency injunctive relief, ordering McMullen to:  return all copies of the documents and information he removed from Bankers Life; remove any summaries of the information contained in these documents; and

identify all third parties with whom he has shared this information (other than the policyholders themselves), to facilitate Bankers Life's retrieval of such information. Bankers Life also seeks its reasonable attorneys' fees and costs incurred in seeking the return of documents and information, per its contracts with McMullen and the trade secrets statutes.

4. Bankers Life has a contractual agreement with McMullen to arbitrate disputes. The arbitration agreement provides an exception for requests for emergency injunctive relief. Therefore, this action against McMullen is limited to the request for emergency injunctive relief and the attorneys' fees and costs in obtaining same. Bankers Life intends on pursuing a separate arbitration claim against McMullen for damages caused by the actions discussed above and other actionable conduct including breach of fiduciary duty.

## II. PARTIES, JURISDICTION AND VENUE

5. Plaintiff Bankers Life is incorporated in Illinois, its principal place of business is in Illinois, and therefore is a citizen of Illinois.

6. On information and belief, McMullen is a resident of Minnesota and a citizen of that state. McMullen was a Unit Field Trainer ("UFT") for Bankers Life, and a member of management at Bankers Life's Edina, Minnesota branch sales office.

7. The Court has subject matter jurisdiction over the claims against McMullen pursuant to 28 U.S.C. § 1331, federal-question jurisdiction, as Plaintiff asserts a claim under the Federal Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839 (2016), against McMullen.

8. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state-law claims against McMullen, as those claims arise from a core group of operative facts that also serve as the basis for Plaintiff's federal claim against McMullen.

9. Personal jurisdiction is proper here. McMullen resides in this District. Plaintiff seeks to enjoin McMullen's actions which occurred principally in this District. Moreover, McMullen executed an arbitration agreement with Bankers Life, attached as Exhibit 1. Under that agreement, McMullen and Bankers Life agreed any claim for temporary, preliminary, or injunctive relief "shall be filed in the state or federal judicial district (1) where the Agent works as of the filing of the demand for arbitration or (2) where the Agent last worked if the relationship between the Company and the Agent has terminated." *See* Exhibit 1, at 5.

10. Venue is proper here because McMullen resides in this District and because the actions at issue occurred principally in this District. *See* 28 U.S.C. § 1391(b)(1), (2).

### III.   FACTS

**Background**

11. Bankers Life provides seniors with various insurance and financial products, such as long-term care insurance, life annuities, and Medicare Supplement insurance. In furtherance of its business, Bankers Life utilizes both employees and agents (*i.e.*, independent contractors) to provide these products to customers/policyholders.

12. Bankers Life provides these employees and agents access to significant confidential and trade secret information – including customer lists, policyholder cards, and contact data. Knowing who has Bankers Life policies is extremely valuable, as such

individuals are by definition individuals who have both the financial means and the inclination to purchase the products Bankers Life and its competitors provide. Finding such individuals is an extremely time-intensive endeavor. Further, by having access to the policyholder cards and policyholder contact data, employees and agents became privy to confidential and trade secret policyholder information including, without limitation, the policyholders' names, addresses, contact information, dates of birth, social security numbers, the policies each policyholder has with Bankers Life, the coverage provided by those policies, the premiums paid by the policyholders, and the policyholders' goals, concerns and other personal information pertinent to insurance purchase decisions.

13.     McMullen worked for Bankers Life as an independent contractor insurance agent from 2009 through October 2015.  In May 2015, McMullen executed an Agent Agreement under which Bankers Life authorized McMullen to solicit and sell its insurance products. (Exhibit 2.)  Bankers Life authorized McMullen to solicit and sell its insurance products by issuing him a unique agent number – N8113.  McMullen also executed an Arbitration Agreement. (Exhibit 1.)

14.     McMullen left his position with Bankers Life in October 2015.

15.     In July 2017, McMullen returned to Bankers Life as an independent contractor insurance agent.  Bankers Life reactivated McMullen's agent number and authorized him to again solicit and sell Bankers Life's insurance products under the terms and conditions outlined in the Agent Agreement, into which the Arbitration Agreement is incorporated by reference.

16. Under paragraph 23 of the Agent Agreement, McMullen agreed not to "collect, access, store, transmit or otherwise disclose PII for any other purpose, or to any person other than the Company or the individual who is the subject of the PII unless specifically authorized in writing by the Company." (Exhibit 2 at p. 9.)

17. Under paragraph 24 of the Agent Agreement, the term "Confidential Information" is defined to include "PII, and all other information relating to prospects, applicants, and past and present insurance customers, price lists, pricing policies and financial information or other business or technical information … which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the Company." McMullen agreed to return all Confidential Information to Bankers Life upon the termination of the Agent Agreement. (Exhibit 2 at p. 10.)

18. Bankers Life also hired McMullen as a Unit Field Trainer ("UFT") at its Edina, Minnesota branch sales office ("Edina BSO"). The UFT position is a management position at Bankers Life. As a manager, Bankers Life entrusted McMullen with access to information regarding all policyholders serviced by managers and agents affiliated with the Edina BSO.

19. McMullen executed a Unit Field Trainer Contract under which McMullen agreed to "promptly return to the Company all literature, forms, manuals, supplies, customer lists, contact data and other written or printed information in any way pertaining to the business of the Company[.]" (Exhibit 3 – UFT Contract.) McMullen also agreed not to divulge or disclose confidential policyholder information to which he had access as a

5

result of his UFT position. (*Id.*) McMullen agreed "[i]n the event of a breach or threatened breach of this paragraph, the Unit Field Trainer agrees that the Company shall be entitled to seek all appropriate remedies, including without limitation, injunctive relief and monetary damages." (*Id.*)

20. McMullen also executed a Data Privacy and Security Addendum under which he is contractually obligated to return all Personally Identifiable Information to Bankers Life, regardless of the format within five days of the end of his employment with Bankers Life. (*See* Exhibit 4 at p. 6, Section 8.)

21. The contractual agreements McMullen executed with Bankers Life obligate him to indemnify Bankers Life for any reasonable attorneys' fees it may incur due to his noncompliance with his obligations under the agreement. (*See* Exhibits 2, 3.)

22. The confidential nature of the information defined as Confidential Information cannot be disputed. Policyholder cards and policyholder contact data contain HIPAA protected confidential information. Consistent with its obligations under HIPAA, Bankers Life implements various security measures to maintain the confidentiality of protected information. For example, Bankers Life required McMullen to complete an online course regarding his responsibility for enhanced privacy of information covered by HIPAA following the passage of the Health Information Technology for Economic and Clinical Health Act.

23. While performing services as an agent and UFT for Bankers Life, McMullen utilized the confidential and trade secret information described above in identifying Bankers Life's current and prospective customers, interfacing with them, and selling them

6

various insurance and financial products. McMullen could not have performed any of this work on behalf of Bankers Life without such information, and McMullen would not have learned or otherwise had access to such information but for his association with Bankers Life.

24. In addition to obtaining contractual protections with its agents and employees, Bankers Life took, and still takes, additional measures to guard against the unauthorized disclosure of its confidential and trade secret information. For instance, all policyholder cards, policyholder contact information, and the like are stored in password-protected computer databases.

25. While these databases are accessible by agents and management employees alike, the level of access varies. Agents may only access information about those customers they service. Managers may access information about every customer serviced by the branch.

26. Further, by meeting face-to-face with customers, learning detailed information about them, and addressing their insurance needs, Bankers Life's employees and agents develop, maintain, and advance the relationship between Bankers Life and its customers. It takes years to develop these customer relationships. As such, Bankers Life invests substantial time and resources in obtaining and developing these customer relationships. McMullen would not have had these customer relationships but for his association with Bankers Life.

**McMullen's Actions**

27. On March 26, 2021, Human Resources interviewed McMullen regarding complaints it had received about his behavior.

28. Immediately after his interview with Human Resources concluded, McMullen accessed Bankers Sales Productivity Network (BSPN), a password protected database used by agents and managers to access PII and other confidential information for the purpose of servicing Bankers Life policyholders. McMullen performed these transactions:

   a. Exported a cross sell report list identifying 535 policyholders;

   b. Exported a cross sell report list identifying an additional 1001 policyholders;

   c. Exported a cross sell report list identifying an additional 372 policyholders; and

   d. Exported a cross sell report list identifying an additional 641 policyholders.

(Exhibit 5 – McMullen Download Report.)

29. A cross sell list report contains the following information: (1) the policyholder's name; (2) the policyholder's address; (3) the policyholder's phone number; (4) the policy number; (5) the policy code; (6) the type of policy (i.e., life insurance, long term care); (7) the date the policy issued; (8) the name of the designated beneficiary; (9) the policyholder's birthdate; (10) the annual premium paid by the policyholder; and (11) whether the policy is lapsed, terminated or still active.

30. Bankers Life became aware of McMullen's download activity and asked him to explain the reasons for his actions. McMullen stated he downloaded records of policyholders he serviced and records of policyholders serviced by other agents in case he got locked out of BSPN; in case clients contacted him or he needed to contact clients; and for the agents in case clients contacted McMullen instead of the agent who serviced the policyholder.

31. While Bankers Life deleted files from the laptop McMullen used to download these records, Bankers Life believes McMullen continues to possess information contained in some or all of the cross sell report lists he exported on March 26, 2021.

32. McMullen is now affiliated Heartland Retirement Group ("Heartland") and American Senior Benefits ("ASB"), direct competitors of Bankers Life. He is listed on Heartland's website as being an agent. On information and belief, Heartland/ASB agents are responsible for selling products to customers that are made available through Heartland and ASB. These are the same responsibilities McMullen had as an agent and UFT of Bankers Life.

33. Despite his contractual obligations to return Bankers Life's confidential information to Bankers Life, McMullen has not returned the information he downloaded and exported.

## IV.  CLAIMS
### COUNT I
### Breach of Contract

34. Paragraphs 1 through 33 of the Complaint are fully incorporated herein by reference.

35. Bankers Life offered McMullen the agreements attached hereto as <u>Exhibits 1-4</u> ("McMullen Agreements"), and McMullen accepted those offers.

36. McMullen received adequate consideration for the McMullen Agreements.

37. Bankers Life performed all of its obligations under the McMullen Agreements, including permitting McMullen to solicit and sell its insurance products, paying him commissions for policies he wrote, and providing him access to Bankers Life's confidential and trade secret information.

38. McMullen breached his obligations under the McMullen Agreements by removing confidential Bankers Life information from Bankers Life's electronic databases and failing to return such information since his departure from Bankers Life.

39. Bankers Life has suffered irreparable harm as a result of McMullen's breach, will continue to suffer irreparable harm in the absence of an injunction, and has no adequate remedy at law without an injunction.

40. Wherefore, Bankers Life respectfully requests that:

    a. McMullen be ordered to return all copies of all confidential information (as that term is defined in the McMullen Agreements) he removed or copied from Bankers Life, and any documents or summaries containing such information;

    b. McMullen be ordered to identify in a signed declaration all third parties with whom he has shared such information, and which information he shared with each such third party;

  c. McMullen be ordered to submit all electronic storage devices he has used since March 1, 2021, to a computer forensic inspection to confirm deletion of all such information;

  d. McMullen be ordered temporarily to cease and desist from using any such information;

  e. McMullen be ordered preliminarily, through the issuance of a determination on the arbitration claim filed regarding this issue, to cease and desist from using any such information;

  f. McMullen be ordered to pay Bankers Life's reasonable attorneys' fees incurred in bringing this action, and any other relief the Court deems to be just.

## COUNT II

**Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act of 2016**

41. Paragraphs 1 through 33 of this Complaint are fully incorporated herein by reference.

42. The policyholder information described in Paragraphs 12 and 29 constitutes trade secrets within the meaning of Section 1839(3) of United States Code Title 18. Such information is valuable to Bankers Life, would be valuable to a competitor, and was developed at great expense to Bankers Life. Such information is subject to reasonable security efforts and is not known to Bankers Life's competitors through legitimate means. Moreover, the distribution of such information to third parties is harmful to Bankers Life's

reputation and to the policyholders themselves, as policyholders entrust such private information to Bankers Life.

43. McMullen misappropriated Bankers Life policyholder information by removing copies of such information from Bankers Life.

44. McMullen is now affiliated with Heartland and ASB, direct competitors to Bankers Life, in a position substantially similar to the position McMullen held with Bankers Life.

45. By downloading a significant volume of Bankers Life's confidential and trade secret information after being confronted about misconduct allegations that had been levied against him and stating he obtained the information in case his employment with Bankers Life ended and he needed to service clients, McMullen demonstrated a nefarious motive for his conduct.

46. Based on McMullen's conduct and stated rationale for his conduct, Bankers Life has reason to believe McMullen has used or intends to use Bankers Life's confidential information to the detriment of Bankers Life.

47. Bankers Life has suffered irreparable harm as a result of such conduct, will continue to suffer irreparable harm in the absence of an injunction, and has no adequate remedy at law without an injunction.

48. Wherefore, Bankers Life respectfully requests that:

    a. McMullen be ordered to return all copies of all policyholder information they removed, received, or copied from Bankers Life, and any documents or summaries containing such information;

      b.    McMullen be ordered to identify in a signed declaration all third parties with whom they have shared such information, and which information he shared with each such third party;

      c.    McMullen be ordered to submit all electronic storage devices each person has used since March 1, 2021, to a computer forensic inspection to confirm deletion of all such information;

      d.    McMullen be ordered temporarily to cease and desist from using any such information;

      e.    McMullen be ordered preliminarily, through the issuance of a determination on the arbitration claim filed regarding this issue, to cease and desist from using any such information;

      f.    McMullen be ordered to pay Bankers' Life's reasonable attorneys' fees incurred in bringing this action, and any other relief the Court deems to be just.

## COUNT III

**Misappropriation of Trade Secrets under the Minnesota Uniform Trade Secrets Act**

49.    Paragraphs 1 through 33 of this Complaint are fully incorporated herein by reference.

50.    The policyholder information described in Paragraphs 12 and 29 constitutes trade secrets within the meaning of MN Stat. §§ 325C.01 *et seq.* Such information is valuable to Bankers Life, would be valuable to a competitor, and was developed at great expense to Bankers Life. Such information is subject to reasonable security efforts and is

not known to Bankers Life's competitors through legitimate means. Moreover, the distribution of such information to third parties is harmful to Bankers Life's reputation and to the policyholders themselves, as policyholders entrust such private information to Bankers Life.

51. McMullen misappropriated Bankers Life policyholder information by removing copies of such information from Bankers Life.

52. McMullen is now affiliated with Heartland and ASB, direct competitors to Bankers Life, in a position substantially similar to the position McMullen held with Bankers Life.

53. By downloading a significant volume of Bankers Life's confidential and trade secret information after being confronted about misconduct allegations that had been levied against him and stating he downloaded the information in case his employment with Bankers Life ended and he needed to service clients, McMullen demonstrated a nefarious motive for his conduct.

54. Based on McMullen's conduct and stated rationale for his conduct, Bankers Life has reason to believe McMullen has used or intends to use Bankers Life's confidential information to the detriment of Bankers Life.

55. Bankers Life has suffered irreparable harm as a result of such conduct, will continue to suffer irreparable harm in the absence of an injunction, and has no adequate remedy at law without an injunction.

56. Wherefore, Bankers Life respectfully requests that:

      a.    McMullen be ordered to return all copies of all policyholder information they removed, received, or copied from Bankers Life, and any documents or summaries containing such information;

      b.    McMullen be ordered to identify in a signed declaration all third parties with whom they have shared such information, and which information they shared with each such third party;

      c.    McMullen be ordered to submit all electronic storage devices he has used since March 1, 2021, to a computer forensic inspection to confirm deletion of all such information;

      d.    McMullen be ordered temporarily to cease and desist from using any such information;

      e.    McMullen be ordered preliminarily, through the issuance of a determination on the arbitration claim filed regarding this issue, to cease and desist from using any such information;

      f.    McMullen be ordered to pay Bankers' Life's reasonable attorneys' fees incurred in bringing this action, and any other relief the Court deems to be just.

## **VERIFICATION**

I, John Fitzgerald, of Bankers Life and Casualty Company, being duly sworn, depose and state I have read the foregoing Verified Complaint for Emergency Injunctive Relief and Other Relief, and know the contents thereof to be true to the best of my

knowledge and belief, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____
John Fitzgerald

Dated: May 21, 2021

    s/ Michael R. Link
_____
Michael R. Link, Bar No. 0390019
mlink@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

Attorneys for Bankers Life and Casualty Company

4834-3815-1914.1 / 079456-1022